Robert C. VOSS, Trustee, Plaintiff, and

CITY OF MADISON, a municipal corporation, Plain-
tiff-Appellant,

v.

CITY OF MIDDLETON, a municipal corporation,
Defendant-Respondent.†

Court of Appeals

*No. 89–1519. Orally argued February 7, 1990.—Decided April 5,
1990.*

(Also reported in 456 N.W.2d 632.)

†Petition to review granted.

For the plaintiff-appellant the cause was submitted on the briefs of *Henry A. Gempeler,* city attorney, by *James M. Voss,* assistant city attorney, of Madison.

For the defendant-respondent the cause was submitted on the brief of *Lawrence E. Bechler* of *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison.

Before Eich, C.J., Dykman and Sundby, J.

EICH, C.J. Robert Voss and the City of Madison appeal from a summary judgment dismissing their complaint against the City of Middleton. They had sought a declaratory judgment voiding Middleton's vacation of a ten-foot portion of a street dead-ending at the Middleton-Madison line. The dispositive issue is whether Madison and Voss are the owners of property "abutting" the portion of the street proposed to be vacated within the meaning of sec. 66.296(2)(c), Stats.[1] If they are, the statute gives them the power to "veto" the vacation. We

---

[1]The statute provides:

(c) No discontinuance [vacation] shall be ordered if a written objection . . . is filed with the city . . . clerk by any of the owners abutting on the portion sought to be discontinued or by the owners of more than one-third of the frontage of the lots and lands abutting on that portion of the remainder thereof which lies within 2,650 feet from the ends of the portion proposed to be discontinued; or which lies within so much of said 2,650 feet as shall be within the corporate limits of the city or village.

conclude that the statute is plain and unambiguous, and that Voss and Madison, either or both of them, are abutting owners with power to prohibit the vacation.

In the general area in which this dispute arose, the border between the cities of Middleton and Madison runs in a generally east-west direction with Middleton on the north. Middleton Street, a residential street in the City of Middleton, was constructed in the 1950's and 1960's. In the area in question, it runs in a general north-south direction and ends at the Middleton-Madison line. A barricade had been maintained at the end of the street since 1970.

The adjoining land in Madison was unimproved. In 1983, Voss, as trustee for the owner or owners of much of that land, prepared a preliminary plat for a residential subdivision just south of the Middleton-Madison line and submitted it to City of Madison officials for approval. The plat showed Middleton Street extending a few feet across the cities' joint border into the subdivision, where it ended in a cul-de-sac. The plat and street layout were furnished to Middleton's planning staff, but because the City of Madison never formally approved the plat, the area remained undeveloped.

Three years later Voss submitted another preliminary plat for the same lands. This time, however, the plat did not show Middleton Street ending at a cul-de-sac but included a through street directly connecting with Middleton Street at the cities' border. The land immediately to the east of the proposed "connecting" street, extending from the border southward into the subdivision, was owned by Voss, and the City of Madison owned the land immediately to the west of the proposed street.[2] The revised plat and street layout were

---

[2]This case does not directly involve the City of Madison in

never transmitted to Middleton officials and it was conditionally approved by the City of Madison in July, 1986. Then, after Middleton officials learned of the changes to the plat and its preliminary approval, they attempted to participate in the final approval proceedings, but their attempts were rebuffed by Madison.

Half a year later, in late March, 1987, Voss's plat still had not been finalized. On March 31, the Middleton Common Council introduced a resolution to vacate the southernmost ten feet of Middleton Street and create a permanent cul-de-sac just north of the Madison-Middleton border. Notice of the hearing on the resolution (set for May 19) was provided to owners of all property touching the southerly portion of Middleton Street within the Middleton City limits. Middleton also furnished information on the proposal to Madison and Voss.

After receiving this information, Voss finalized his subdivision plat—which had been approved by the City of Madison—by recording it in the office of the Dane County Register of Deeds. As perfected, the plat subdivided the lands within the City of Madison and provided for a through street purporting to connect with Middleton Street at the Madison-Middleton border.

Prior to the May 19 hearing on Middleton's proposal to vacate and dead-end the southern tip of Middleton Street, Madison and Voss filed written objections to the proposal. Madison's transportation director appeared at the hearing in opposition to vacation as did a Madison alderperson. Following the hearing, the Middleton Common Council adopted the resolution vacating the street. Shortly thereafter, Middleton removed ten feet of pavement extending north into Middleton from the border.

its corporate or governmental capacity, but only as the owner of real estate.

Madison and Voss brought this declaratory judgment action challenging the vacation. At that time, the platted lands were still unimproved and no street existed south of the Madison-Middleton border. The street was constructed a month or so later, and in the intervening months and years the subdivision has been fully developed or nearly so.

The trial court, concluding that one cannot "abut" on a street without having a reasonable expectation of access to it, held that, because of Middleton's barricade, Voss and Madison did not have access to the southern end of Middleton Street and thus were not "abutting owners" within the meaning of the statute. The court dismissed their complaint and they appealed.

■

The "methodology" for deciding motions for summary judgment—a procedure that is the same in the trial and appellate courts—is well-known and need not be repeated here. *See In re Cherokee Park Plat,* 113 Wis. 2d 112, 115-16, 334 N.W.2d 580, 582-83 (Ct. App. 1983). Generally, where the pleadings state a cause of action and a defense, and where no material facts are in dispute, summary judgment is an appropriate means of reaching and deciding the legal issues in a case; and that is the situation here.

While sec. 66.296(2)(c), Stats., extends the "veto" over street vacations to owners other than those whose property directly abuts the portion of the street sought to be vacated, we believe the case turns on whether either Voss or Madison (or both) were owners of lands "abutting on the portion [of Middleton Street] sought to be discontinued."

When the legislature gave "abutting" owners an absolute veto power over street vacations, it did not define the term. However, the Wisconsin Supreme Court

supplied what we believe to be the controlling definition in *Royal Transit, Inc., v. West Milwaukee,* 266 Wis. 271, 63 N.W.2d 62 (1954). The case bears discussion.

Royal Transit owned land at the end of a dead end street in the Village of West Milwaukee. The land did not touch on the lateral borders of the street, but, as is the case with the Voss/Madison land, only at the street's end. Royal Transit's terminal was located on the land and its trucks used the street to enter and leave the terminal area. Apparently at the request of other property owners in the neighborhood, the village adopted an ordinance restricting traffic on the street to light vehicles and erected a barricade at the dead end.

At the time all this was occurring, sec. 80.47, Stats. (1951), provided that owners of lands "abutting on any . . . street" had a right to "free and unobstructed use" of the street. Royal Transit sued, seeking an injunction requiring removal of the barricade. The trial court granted the injunction, holding that Royal Transit's property "abutted" the street within the meaning of the statute. The supreme court affirmed, adopting the following definition of the term "abut" found in 10 E. McQuillin, *Municipal Corporations* sec. 30.55, at 657 (3rd ed. 1949):

> When no land intervenes between the land of the abutter and the street, his [or her] property is said to "abut." If the property does abut, the lotline and streetline are in common. Of course, where there is no physical connection between the lotline and the streetline, the owner of the lot is not an abutter. *Royal Transit,* 266 Wis. at 274, 63 N.W.2d at 63.

Applying that definition to *Royal Transit,* the court placed principal reliance on a Connecticut case, *Johnson v. Town of Watertown,* 38 A.2d 1 (Conn. 1944), which also involved property abutting the end of a dead end

street. The property owner in *Johnson* was a cemetery association which had constructed a driveway from its land to the end of the street, and the lawsuit arose when owners of land adjoining the lateral borders of the street sought to close off the cemetery association's access to the street. Connecticut law gave "abutting" owners the right to reasonable access to streets. The Connecticut court held that because there was "no intervening land between it and the street," the association's land abutted the street and its right of access could not be defeated by the other owners. *Id.* at 4.

We see *Royal Transit* as compelling a similar result here—a holding that Voss and Madison, either or both of them, were "owners abutting on the portion [of Middleton Street] sought to be discontinued" within the meaning of sec. 66.296(2)(c), Stats. Prior to the final approval of Voss's plat, there was no question that he owned the land abutting Middleton street at its terminus at the Madison-Middleton boundary. After the plat approval which, as indicated, included a street connecting with Middleton Street at that terminus, the land underlying the platted street was either owned by the City of Madison or by both Voss and Madison, each to the street's centerline.[3]

Middleton suggests, however, that *Royal Transit* is distinguishable because there, as in *Johnson,* the "abut-

---

[3]Whether Madison, as it contends, owns the land underlying the platted street as a result of its dedication as a street or whether, as some authorities suggest, the bordering landowners—here Madison and Voss—each own the underlying land to the platted street's centerline is immaterial. In either situation Voss and Madison, either or both, would own lands abutting Middleton street at its terminus at the Madison-Middleton border and thus be entitled to "veto" the vacation under sec. 66.296(2)(c), Stats.

ters' " existing physical access to the street was sought to be eliminated, whereas neither Madison nor Voss had actual access to Middleton Street because of the barricade. "The expectation of access," argues Middleton, "is inherent in [the term] 'abut.' "

The argument, however, overlooks the fact, which we perceive as crucial, that in *Royal Transit* the transit company would not have been entitled to access to the street—and to the injunction prohibiting the village from interfering with that access—had its property not "abutted" the dead end street. And the same is true with respect to the cemetery association's right to access in *Johnson.* Had the association's property not abutted the dead end street, it would have had no right of access to protect against interference by the other owners. In both cases, the issue was—as it is here—whether the owners' property "abutted" the street.

Similarly, if Voss or Madison do not "abut" the dead end of Middleton Street—the portion of that street which the City of Middleton seeks to vacate—they would have no right to object. But under the plain and unambiguous terms of the statute and under the definition of "abutting" adopted and applied by the supreme court in *Royal Transit,* the conclusion is inescapable: they are, either or both, abutting owners and, as such, they possess the absolute veto granted them by the legislature.

Finally, Middleton suggests that because Madison's and Voss's property is entirely within the City of Madison—because neither owns property in the City of Middleton abutting Middleton Street—the statutory veto should not extend to them. But the statute is not so limited and, on this point at least, we believe properly so. Streets often form boundaries between municipalities.

Years ago, in fact, streets frequently were laid out so that their centerlines comprised a municipal boundary. Such streets can be found in most urban locations, and the many county-line or town-line roads that dot most rural maps attest to a similarly widespread practice in nonurban areas. We do not believe one could seriously question that the owners of lots on both sides of such streets or roads "abut" them—those owners in a nonvacating municipality would have as much right under the statute to object to a vacation of the street as would the owners of lots across the street on the vacating municipality's side. We do not see any difference—and the cases tell us there is none—where the owner abuts the street's dead end, rather than its side, at the municipal boundary.[4]

---

[4]Middleton's counsel pointed out at oral argument that the definition of "abutting" appearing in 10 E. McQuillin, *Municipal Corporations* sec. 30.55, at 657 (3rd ed. 1949), and adopted by the *Royal Transit* court—and quoted earlier in this opinion—has, in succeeding editions of the text, been modified by the addition of the following italicized language: "*one view is that property cannot abut upon a street not located in the municipal limits in which the lot is situated, notwithstanding the street line and the lot line are common and physically connected.*" 10A E. McQuillin, *Municipal Corporations* sec. 30.55, at 366 (rev. 3rd ed. 1990).

The sole supporting authority cited in the text, a New Jersey case, *Good Deal of Ivy Hill, Inc. v. City of Newark,* 160 A.2d 630 (N.J. 1960), did so hold. However, we have been able to find only one case from another jurisdiction adopting the same rule. And that case, *Crenshaw v. City of Belle,* 571 S.W.2d 234 (Mo. 1978), involved a statute plainly defining the adjoining property owner as one owning property within the corporate limits of the vacating municipality. *Id.* at 235. Thus, the added phrase in *McQuillin* does not represent a rule of even moderately widespread application but only the view of a single court. And it is not one we find particularly persuasive.

273

It is important to remember, too, that sec. 66.296, Stats., protects the property interests of owners who may be adversely affected by the vacation of a street. And that interest is implicated regardless of corporate boundary lines. It is an interest which adheres in the owners' property rights.

We must note, however, that the protection of those interests in the manner chosen by the legislature in drafting the statute can produce less-than-desirable results for adjoining owners—as this case illustrates.

It is obvious, for example, that the City of Middleton and its residents—particularly those living along Middleton Street—uniformly prefer the existing dead end just north of the Madison line. The record also suggests that, basically, the same is true for those who have purchased lots along the extension of Middleton Street in the Voss plat. It also appears that a projected twenty-fold increase in vehicular traffic on Middleton Street, once it becomes a through street, will not only destroy the quiet atmosphere of the neighborhood but will also require the City of Middleton to expend significant sums of money to improve the street to handle the increased traffic. Additional concerns have been expressed about the effect of that increased traffic—and the additional pressures for development arising from the existence of a through street in the area—on a nearby pond which Middleton has already expended substantial sums to improve and protect.

Finally, as we have noted above, Voss's original preliminary plat for the area showed the Madison portion of Middleton Street ending in a cul-de-sac, and this plat was furnished to Middleton officials. Several years later, when Voss amended the plat to show the through street, neither Voss nor the City of Madison furnished any information on the changes to Middleton prior to the

plat's preliminary approval, despite a prior agreement between the two cities that they would share information in a timely manner about proposed developments near their common border.

The net result of all this is that the City of Madison and the developer, Voss, can impose their desire to route large amounts of vehicular traffic through a quiet, established residential area regardless of the objections of area residents on both sides of the Middleton-Madison border, and despite the wishes of the municipality proposing the street vacation, and, further, despite the additional expenses and possible detriment to natural resources in the area caused by that traffic.

It is anything but a happy result. But it is not for the courts to write or amend legislation. Where, as here, the legislature has spoken in plain and unambiguous language and where the supreme court has addressed the issue in language that is equally clear, the result is compelled even in the face of equally compelling factors that, were we free to do so, might well lead to an opposite conclusion.

We hold, therefore, that under the plain language of sec. 66.296(2)(c), Stats., and the supreme court's decision in *Royal Transit,* Voss and Madison, either or both, are the owners of lands "abutting" the portion of Middleton Street sought to be vacated by the City of Middleton. It follows that we must reverse the judgment of the circuit court.

*By the Court.*—Judgment reversed.